CAMDEN COUNTY CIRCUIT COURT.

JOHN O. WILSON AND DANIEL B. FRAZIER, PLAINTIFFS,
v. THOMAS M. CORNBROOKS, DEFENDANT.

Decided May 31, 1927.

Ejectment—Landlord and Tenant—Covenant Against Sub-letting
Without Consent—No Provision Relating to Assignment of
Lease—Lease was Several Times Assigned—Question Here
is Whether Defendant Holds Under an Assignment or a
Sub-Lease—In Cases of Assignment There is Privity Be-
tween Landlord and Assignee But No Privity Between Land-
lord and Sub-tenant—Held, That Where Lessee Reserves
Right of Re-entry Upon Failure to Pay Rent or Upon Viola-
tion of Covenants He Does Not Part With Entire Term or
Estate and the Rendition of Such a Contingent Reversionary
Interest Creates a Sub-Tenancy—The Fact That a Docu-
ment is Named an Assignment Does Not Make It Such—The
Document Examined and Held to be a Sub-Lease—Held
Further, That There is Not Sufficient Justification for Al-
leging That Plaintiffs Waived Their Right of Re-entry if the
Document be Held a Sub-Lease.

For the plaintiffs, *Starr, Summerill & Lloyd.*

For the defendant, *Marshall H. Diverty* and *Floyd H.
Bradley.*

DONGES, J. This is an action in ejectment. Defendant
sets up a right to possession under (1) an alleged assign-
ment of lease, and (2) waiver by plaintiffs of right to pos-
session, if the agreement is a sub-letting and not an assign-
ment. Plaintiffs move to strike out the answer.

The complaint was amended to omit any claim for *mesne*
profits, so that the suit is for possession only. Depositions
were taken and the questions raised are fully submitted.

The following facts appear: On February 13th, 1919,
George W. Jessup executed a lease to Automobile Sales Cor-
poration of premises 525-527 Market street, Camden, New

Jersey, for a term of ten years, from February 1st, 1919, to February 1st, 1929, upon payment of a monthly rental of $185.

The lease contained a provision that the lessee shall not "underlet said premises, or any part thereof, nor permit any person or persons to occupy the same, or any part thereof, nor use or permit any part thereof to be used for any other purpose than automobile business, nor make or suffer to be made any alterations therein, without the written consent of the said party of the first part."

February 13th, 1925, Jessup conveyed the premises to George E. Tanner, Incorporated, and by sundry conveyances the title became vested in plaintiffs, and was held by them at the time this suit was instituted. During the pendency of this suit, plaintiffs have conveyed the property. On the oral argument, defendant insisted that the conveyance by plaintiffs, after suit brought, would defeat a recovery, but this fact is not pleaded, and defendant does not urge the point in his brief; hence, if there is any merit in it, it will be considered as having been abandoned.

The interest of Jessup in the aforementioned lease was conveyed by sundry assignments to plaintiffs.

The lease was assigned by Automobile Sales Corporation, the original lessee, to Neel-Cadillac Company, on January 31st, 1920, for a consideration of $1, with the written consent of the lessor, Jessup, endorsed on the lease.

In October, 1923, Neel-Cadillac Company, executed a paper purporting to assign its lease to John F. Brown, Jr., in consideration of monthly instalments of $350, for the remainder of the term, and recites that it is made "according to certain terms and provisions in said original lease contained." Brown paid $350 monthly to Neel-Cadillac Company, which in turn, made the monthly payments of $185 each to Jessup, or to his grantees.

In December, 1923, Brown executed a paper purporting to assign the lease to Willbert Motor Company, in consideration of monthly payments of $350 each to Neel-Cadillac Company. The purported assignment provided that it was

"subject to the terms and provisions in said original lease contained and also all the estate, right, title and term of years yet to come, claim and demand whatsoever, of, in, and to or out of the same of the said John F. Brown, Jr., subject to the regular payment by the said Willbert Motor Company of the successive instalments of rent herein, above duly set forth, as the same becomes owing to the assignor herein, all of which the said Willbert Motor Company hereby stipulates to make to and through the Neel-Cadillac Company, punctually when due."

While plaintiffs insist that the transfers from Neel-Cadillac Company to Brown, and from Brown to Willbert Motor Company, were, in effect, a sub-letting, they base no right to recover possession thereon, because as is stated in plaintiffs' brief, "Jessup and the intervening owners between him and the present plaintiffs, accepted rent from Neel-Cadillac Company, with the knowledge that some arrangement existed between the latter and Brown and Willbert Motor Company, but only while the last-named company was in possession of the demised premises."

In October, 1925, Willbert Motor Company entered into an agreement with the defendant, Thomas M. Cornbrooks, under which said Cornbrooks entered into possession of the demised premises about November 1st, 1925, and continues in possession. Defendant agreed to pay to Willbert Motor Company the sum of $525 each month. The rent due November 1st, 1925, of $185, was paid by Neel-Cadillac Company to plaintiffs.

Some time hereafter plaintiff became aware of the possession of Cornbrooks, and, on January 30th, 1926, commenced this suit, alleging that defendant holds under a sub-letting, contrary to the provisions of the lease. Defendant insists that he holds by assignment, and not as a sub-tenant, and, in any event, that plaintiffs have waived any right to possession if there was a sub-letting. These two questions are fairly raised by defendant's answer, and both sides agree, are the only meritorious ones to be decided.

Admittedly, if this agreement is an assignment, defendant is entitled to possession. *Field* v. *Mills*, 33 *N. J. L.* 254; *Braunstein* v. *McCrory*, 116 *Atl. Rep.* 707; *Union Lodge* v. *Evans Co. et al.*, 131 *Id.* 880.

1. Does this paper effect an assignment of the lease or a sub-letting?

The paper says that Willbert Motor Company "for and in consideration of the sums hereinafter mentioned, doth hereby assign, transfer and set over unto Thomas M. Cornbrooks, of West Collingswood, Camden county, New Jersey, all its right, title and interest of, in and to a certain indenture of lease dated the 13th day of February, A. D. 1919, made by and between George W. Jessup, of Camden, New Jersey, and the said Automobile Sales Corporation, covering all the premises known as 525-527 Market street, in said city of Camden, State of New Jersey, comprising a garage in the rear, a salesroom in the front and a workroom on the second floor front, with the appurtenances, for the term of ten years from the 1st day of February, 1919, to the 1st day of February, 1929, under the terms and conditions in said indenture of lease," &c.

It is recited, *inter alia,* that the consideration for the agreement is—

1. That the defendant shall pay Willbert Motor Company each and every month during the remainder of the term the sum of $525.

2. That the defendant is permitted, in so far as such permission is within the power of the Willbert Motor Company to grant, to use the premises for the purposes set forth in the original lease, and not to permit it to be used otherwise, without the written consent of Willbert Motor Company.

3. That defendant may assign the lease, but not underlet the premises.

4. That Willbert Motor Company will leave certain chattels on the premises for the use of Cornbrooks, during the balance of the term.

5. That defendant, "his representatives, assigns or other parties designated by him to occupy said premises," shall

have peaceful possession, to the end of the term, "so long as the said Thomas M. Cornbrooks shall make the monthly payments hereinbefore provided for."

6. That the Willbert company pay Neel-Cadillac Company $350 a month, and produce evidence of such payment.

7. If Willbert company fails to pay Neel-Cadillac Company defendant may pay direct to Cadillac company, any amount due under prior agreement, and charge same to Willbert company.

8. If Neel-Cadillac Company begins any proceeding for ejectment of defendant, or possession, due to failure to pay any monthly instalment due Neel-Cadillac Company, then rights of Willbert company shall cease, and defendant may negotiate directly with Neel-Cadillac Company, or any other parties, for the making of a new lease, without notice to Willbert company.

9. Willbert company agrees that, upon making the payments provided for, defendant may remain in lawful possession for the balance of the term.

10. If defendant defaults in payment or in the performance of any covenant, the assignment shall become void, and the Willbert company, without notice, may take posses-session of the premises from any occupant thereof, and may re-enter and have possession thereof in the same manner as if the assignment had not been made.

The fact that the paper under which defendant holds is called an assignment will not make it such, if, in fact, the status of defendant thereunder is that of a sub-tenant.

The Willbert company reserved the right of the re-entry for breach of the terms of the contract.

Blackstone thus defines the two grants (2 *Bl. Com.* 327) :

"An assignment is properly a transfer, or making over to another, of the right one has in any estate; but it is usually applied to an estate for life or years. And it differs from a lease only in this—that by a lease one grants an interest less than his own, reserving to himself a reversion; in assignments he parts with the whole property, and the assignee

stands to all intents and purposes in the place of the assignor."

I have not been able to find, nor has my attention been called by counsel to any case in New Jersey dealing with the question here involved.

Chief Justice Green, in *Potts* v. *Delaware Water Power Co.,* 9 *N. J. Eq.* 592 (at *p.* 618), says: "The assignment of a lease is properly the transfer of the interest of the tenant. This is its popular as well as its appropriate and legal meaning."

Chief Justice Beasley, in *Field et al.* v. *Mills,* 33 *N. J. L.* 258, distinguishes the status of the landlord and assignee, and of the landlord and sub-tenant and points out that in the case of assignment there is privity of estate with the landlord, whereas there is no such privity between the landlord and the sub-tenant. Vice Chancellor Pitney, in *Firth* v. *Rowe,* 53 *N. J. Eq.* 520, in concluding that the instrument involved was an assignment and not a sub-lease seems to have reached this conclusion because "it was given for the precise unexpired term of the lease, and reserved precisely the same amount of rent as did the original lease."

This question has been variously decided in other jurisdictions. Indeed, there is such conflict of authority that reconciliation is utterly impossible.

The better view, it seems to me, is that where the tenant reserves the right of re-entry upon failure of his transferee to pay rent or upon violation of covenants, he does not part with his entire term or estate, and that the retention of such contingent reversionary interest creates a sub-tenancy.

Tested by this rule, it is impossible to conclude that the instrument *sub judice* is an assignment.

By this instrument it is provided that Cornbrooks, the grantee, shall pay to his grantor, monthly, a sum greatly in excess of the rent reserved in the original lease; that Cornbrooks shall have such possession as his grantor is able to give, but shall not permit the premises to be used for any purpose except the automobile business, or make any alterations without the written consent of the grantor, Willbert

Motor Company; that he may assign the lease, but may not sub-let; that he shall have the use of certain chattels not included in the original letting; that he shall have possession only so long as he makes the payments provided in the instrument under consideration; that Willbert Motor Company will pay to original lessee, by assignment, the payments due on prior transfer; that, if Willbert company fails to make payment to original assignee, Cornbrooks may make such payment and credit same on amount due to his grantor; that Willbert company will protect Cornbrooks in his possession, against any failure of prior lessees to perform their undertakings; that if Cornbrooks defaults in payments or in the performance of any of the covenants, not of the original lease, but of the instrument in question, his grantor shall have the right to re-enter and have possession "as if this assignment had not been made."

Every provision of this instrument tends to create a relationship between the grantor therein and defendant, and in no sense can be construed as creating privity of estate between the original landlord and the defendant. The landlord has no right of action against the defendant for unpaid rent. The right to re-enter is clearly and distinctly reserved to Willbert Motor Company for any breach of the conditions of the instrument, and no right is reserved to the original landlord to possess the property for failure of the defendant to perform the conditions of the lease. Assignment of a lease creates privity of estate between the landlord and the assignee. *Field* v. *Mills, supra.*

I conclude, therefore, that the instrument under consideration, executed by the Willbert Motor Company, conveying the premises in question, reserving a right of re-entry and withholding a part of the term or estate granted by the original lease, and reserving to itself or its grantors, the right to pay the rent, and containing other provisions inconsistent with the granting of the entire interest of said grantor, was a sub-lease and not an assignment.

2. The second question is, have plaintiffs waived a right to possession?

It is admitted that plaintiffs cannot succeed by reason of any breach of the original lease because of any assignment or sub-letting prior to the grant to defendant.

Defendant urges that because of the so-called assignments prior to the one to the defendant, the plaintiffs have waived the provision of the original lease against sub-leasing.

It must be borne in mind that the covenant in the original lease was against sub-letting and not against assignment. The first transfer was consented to by Jessup, original lessor. The others were not consented to. If they were assignments they were not in contravention of the original lease.

Defendant cites *West Shore Railroad Co.* v. *Wenner,* 70 *N. J. L.* 233, as authority for the statement that if the landlord waived one sub-letting the condition against sub-letting is at an end. The opinion of Mr. Justice Dixon in that case, does not go so far. On the contrary, he held that the subletting to Bindernagle by the assignee, Wenner, was the first violation of the condition against sub-letting, and that such condition was not discharged.

Vice Chancellor Foster, in *Miller* v. *Newlon-Humphreville Co.,* 116 *Atl. Rep.* 325, adopts the rule stated in 18 *A. & E. Enc. L.* 681, as follows: "If the lessor consents to a sub-letting, the sub-lease is, of course, valid, though the lease expressly forbids all sub-letting, but the consent of the lessor to one sub-letting, or the waiver of one breach of the covenant against sub-letting is no defense to a breach of the covenant by another and distinct sub-lease."

The rule is thus stated in 35 *Corp. Jur.* 984: "The waiver of a breach of a covenant against sub-letting affords no warrant for subsequent breaches of this covenant."

Despite the apparent conflict of authority, I believe the above to be an accurate statement of the law.

This view reduces the question of waiver to the last transaction. Upon this question both sides have taken proofs and submitted for determination the question of fact as to whether there was a waiver by plaintiffs.

Cornbrooks was to have possession on November 1st, 1925. On October 30th, 1925, he wrote a letter on the stationery of

Willbert Motor Company to the plaintiff Wilson, requesting some repairs, and signed himself "T. M. Cornbrooks, Assignee." This letter was received in Wilson's office on October 31st. On November 2d, Wilson received a check from Neel-Cadillac Company for the November rent. There is some question whether Wilson, or his agent, Stannert, interviewed Cornbrooks during November, but there is denial by Stannert of these interviews. On November 23d, 1925, Cornbrooks again wrote referring to his letter of October 30th, and stating he held a lease on the property. This letter was answered under date of November 27th, in which it was stated the landlord had no knowledge of any change of tenant and requested the assignment be forwarded. On November 30th, Cornbrooks replied stating he had an assignment of the original lease. On December 4th, Wilson wrote requesting the production of the original assignment. On December 5th, Cornbrooks answered that he did not want lease to go out of his hands, but tendered an opportunity for inspection at his office or at Wilson's office.

On December 8th, Mr. Stannert first saw the so-called assignment, and copied some of its terms, and, on advice of counsel, had another inspection and copied the paper. Notice for possession was served on defendants on January 29th, 1926, and this suit was commenced the next day. The defendant never tendered rent to plaintiffs. After November 2d, 1925, the plaintiffs did not cash any checks received from Neel-Cadillac Company.

Under the circumstances, I am of opinion that there was not any failure on the part of plaintiffs to act with reasonable promptness—*first*, to ascertain the true situation, and, *second*, to assert their rights against defendant. The plaintiffs assuredly were guilty of no conduct from which any person could conclude that they were assenting to the occupancy of their premises by the defendant.

These views lead me to conclude that the defendant's answer does not present a meritorious defense, and should be stricken out.